UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAWRENCE McDONALD,

               Plaintiff,

v.

CYNTHIA BRIGGS, *et al*,

               Defendants.

_____/

Case No. 08-11731

Stephen J. Murphy, III
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

## REPORT AND RECOMMENDATION
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 20)

## I.   PROCEDURAL HISTORY

Plaintiff, an inmate currently in the custody of the Michigan Department of Corrections (MDOC), brings this action under 42 U.S.C. § 1983, claiming violations of his rights under the United States Constitution.  (Dkt. 1).  Plaintiff alleges that he has been subject to unconstitutional harassment and retaliation, based on his sexual preference.  *Id.*  On July 2, 2008, this case was referred to the undersigned for all pretrial purposes by the District Court.  (Dkt. 17).

On September 5, 2008, defendants filed a motion for summary judgment. (Dkt. 20).  The Court ordered plaintiff to file a response to defendants' motion for summary judgment by October 16, 2008.  (Dkt. 22).  On September 30, 2008, plaintiff filed a "Motion to Set Aside Ruling of Defendants Motion for Summary

Judgment." (Dkt. 25). The undersigned previously construed plaintiff's submission as both a response to defendants' motion for summary judgment and a motion for additional time to respond to some of the issues raised in defendants' motion. (Dkt. 26). On March 3, 2009, the undersigned recommended that the Court allow plaintiff additional time to respond before deciding the merits of defendants' motion as to five of the seven defendants. (Dkt. 26). On August 18, 2009, this recommendation was adopted by Judge Murphy. (Dkt. 28). Plaintiff filed a supplemental response to the motion for summary judgment on March 25, 2009. This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED** and that plaintiff's complaint be **DISMISSED** with prejudice.

## II.   STATEMENT OF FACTS

### A.   Complaint

Plaintiff claims that defendants retaliated against him after he filed grievances against them for harassing and degrading him in front of other inmates and staff based on his sexual preference. (Dkt. 1). Plaintiff has sued all defendants in both their personal and official capacities. (Dkt. 1, pp. 1, 3). Plaintiff seeks a declaration that defendants violated his constitutional rights and compensatory and

punitive damages in excess of $10,000. (Dkt. 1). Plaintiff attached five grievances to his complaint along with several misconduct tickets. (Dkt. 1).

    B.    <u>Plaintiff's Grievances and Misconduct Tickets</u>

    1.    Misconduct ticket dated **October 26, 2007**

Plaintiff was given a ticket on October 26, 2007 for having an unauthorized inmate (Tanton) in his cell. (Dkt. 1-2, p. 5). Plaintiff stated that he did not know Tanton was in the room, but Tanton stated that he went into plaintiff's cell for sexual activity. According to Officer Daniel's statement, Tanton was missing for over 20 minutes and could not be found. Plaintiff was found guilty based on the statements of Officer Daniels and Tanton. (Dkt. 1-2, p. 5).[1]

    2.    Misconduct ticket dated **November 19, 2007**

On November 19, 2007, plaintiff received a misconduct ticket written by RUO Briggs. (Dkt. 1, p. 6). Plaintiff's request to go outside and smoke was denied because he was then on restriction. Fifteen minutes later, plaintiff was found smoking in the bathroom, without authorization. Plaintiff denied the charges but was found guilty at the hearing. *Id*.

---

[1] Only the misconduct hearing report was attached to plaintiff's complaint. The misconduct report itself is not found in the record before the Court.

3.      Grievance SRF0711276117a; incident on **November 19, 2007**

Plaintiff submitted this grievance on **November 25, 2007** arising from an incident on November 19, 2007.  (Dkt. 20, Ex. B).  Plaintiff claimed that RUO Briggs called him to the officer desk and started "cursing me out and yelling at me in front of a bunch of other inmates."  Plaintiff stated that he felt humiliated and degraded and felt that Briggs violated Policy Directive 03.03.130, Protection from Mental or Physical Abuse.  Plaintiff requests to be moved because he feels unsafe with staff.  He also states that if he gets any tickets after filing the grievance, it will be "retaliation."  *Id*.  The grievance was denied at Step I because the respondent was unable to find any evidence to validate plaintiff's claims.  Plaintiff was unwilling to supply the names of any inmates who allegedly witnessed this verbal harassment.  It was also noted that during the interview with plaintiff, he was "vague, argumentative, and critical of just about every regular staff member in 700 Unit."  Plaintiff also stated to the interviewer that he had a lot of friends in the 900 unit and wanted to move there.  The interviewer concluded that plaintiff might be attempting to make it appear as though he was being singled out for harassment so he could convince someone to move him.

Plaintiff filed a Step II appeal on December 7, 2007.  (Dkt. 20, Ex. B). Plaintiff wrote that Briggs violated various policy directives and plaintiff's right to be free from discrimination and harassment.  Plaintiff also alleged abuse of

Report and Recommendation
Defendants' Motion for Summary Judgment
*McDonald v. Briggs*; 08-11731

authority and staff corruption.  In the Step II response, the respondent noted that no

witnesses of the alleged verbal abuse had been found and plaintiff offered no

evidence to substantiate his accusations.  It was noted that the alleged abuse took

place in an area where staff and inmates congregate and a staff member behaving

as alleged by plaintiff would have been noticed.  Yet, no prisoner witnesses could

be identified or found to validate plaintiff's story.  Thus, plaintiff's credibility was

found lacking and the grievance denial upheld.  *Id.*

Plaintiff filed a Step III grievance appeal alleging a "violation of due

process."  (Dkt. 20, Ex. B).  Respondent concluded that plaintiff provided no

additional evidence and that staff had properly addressed the grievance at Steps I

and II.  *Id.*

4.     Grievance SRF200711276017c; incident **November 19, 2007**

Plaintiff filed a grievance on **November 25, 2007** arising from an incident

that allegedly occurred on November 19, 2007.  (Dkt. 20, Ex. C).  In this

grievance, plaintiff claimed that ARUS Novak told him that she "has him right

where she wants" him and that she was "not moving [him] because of [his] sexual

preference which is discrimination" and a violation of MDOC policy.  Plaintiff

also expressed his desire to be moved from 700 Unit and his fear of staff

retaliation.  He again states that any misconduct tickets written after he filed this

grievance will constitute "retaliation."  In the Step I response:

Report and Recommendation
Defendants' Motion for Summary Judgment
*McDonald v. Briggs*; 08-11731

When interviewed...McDonald stated he was upset that he was just doing his own time and staff was continuously harassing him.  When I asked McDonald if he had further proof of harassment by staff, he stated "I can't prove anything ........... but it's happening."  I asked him if he had any witnesses to this alleged harassment by staff and he replied "No."

ARUM Novak has indicated that staff reported to her that this prisoner was not complying with sanctions he received as the result of tickets.  He was observed loitering in the bathroom and was disrespectful toward staff.  McDonald received seven (7) major tickets at TCF, and has continued a pattern of similar behavior here at SRF. McDonald has been found guilty of 035 and 023 since arrival, and has six (6) pending major tickets at SRF (036, 036, 036, 023, 026).  If found guilty of each, McDonald will have been found guilty of 15 major tickets in less than one (1) year.  This is behavior consistent with that known as being a management problem.

McDonald was given an opportunity to further support his allegation of staff harassing him, and he failed to, produce any legitimate, or even tangential, evidence. Nor has he provided any witness to contact.  He was aloof in this grievance interaction and did not seem truly willing to resolve this matter.  ARUM Novak has supported that McDonald was not cooperating with sanctions, and when given opportunities to be outside his cell (requests for bathroom) he abused them. There is no evidence of harassment or discrimination.

On December 11, 2008, plaintiff filed a Step II appeal.  Plaintiff claimed that ARUS Novak was in violation of the policy directives pursuant to which plaintiff had a right to be free from discrimination and harassment.  (Dkt. 20, Ex. C).  He

also accused staff of abusing authority and being corrupt. *Id*. The grievance was upheld on appeal given the lack of evidence and plaintiff's history of being a management problem. Plaintiff filed a Step III appeal alleging an abuse of authority. At Step III, the respondent found that staff appropriately responded at the earlier steps and that no new evidence was provided by plaintiff to support the allegations. (Dkt. 20, Ex. C).

5.      Grievance SRF200711276917c; incident **November 20, 2007**

On **November 27, 2007**, plaintiff filed a grievance arising from an incident that occurred on November 20, 2007. (Dkt. 20, Ex. E). Plaintiff claimed in this grievance that RUO Ott told him that he would make sure plaintiff kept getting tickets because of his sexual preference until plaintiff is forced into a higher security level facility. Plaintiff also states that if he receives more tickets or there are more problems, it will be due to retaliation because he filed this grievance. In the Step I grievance response, the investigator wrote that, initially, plaintiff stated that RUO Ott was coming into the bathroom and harassing plaintiff while he was on the toilet. According to the report, plaintiff then changed his story. Plaintiff also stated during the interview that RUO Ott did not use the "exact words" set forth in the grievance, but "implied them." Plaintiff could not identify any witnesses and RUO Ott denied the incident. Based on plaintiff's vague and

changing story, the lack of any witness or other supporting evidence, and RUO

Ott's denial, the grievance was denied.

Plaintiff appealed the denial to Step II on December 11, 2007. (Dkt. 20, Ex.

E). Plaintiff claimed that RUO violated the MDOC policy directives governing

discrimination and harassment, abused his authority, and that staff was corrupt.

The Step II respondent wrote that plaintiff provided no evidence or witnesses,

changed his story and thus, lacked credibility. The Grievance Coordinator was

directed to monitor plaintiff's grievances to determine if modified access was

warranted. Plaintiff appealed to Step III, claiming a violation of due process. The

Step III respondent found that staff responded appropriately to the earlier two

steps, no evidence supported plaintiff's claims below, and no additional evidence

or information was provided at Step III. The denial was upheld. (Dkt. 20, Ex. E).

      6.    Misconduct ticket dated **November 22, 2007**

On November 22, 2007, plaintiff received a misconduct ticket for going into

the day room without authorization and violating previously imposed restrictions.

Plaintiff was found guilty of this violation, based on the statements of officers

West and Russell. (Dkt. 1, p. 48).[2]

      7.    Grievance SRF200711277117c; incident **November 22, 2007**

---

[2] Plaintiff including only the hearing report, but did not include the
misconduct report itself. Thus, the identity of the complaining officer is not clear
from the record.

On **November 27, 2007**, plaintiff filed a grievance arising from events that occurred on November 22, 2007.  (Dkt. 20, Ex. D).  He claims that CO West told him that she "can not stand homosexuals so every she gets, she's going to write a ticket on me until she can get me out of this unit."  Plaintiff also wrote "now, I don't mind moving out the unit but I don't want the tickets."  Plaintiff asserted that he was being harassed and did not want any retaliation after filing the grievance. In response to Step I, plaintiff was interviewed.  He claims that there were no witnesses to this incident, staff or inmates and that he was wrongfully accused by CO West of being in the day room.  According to the Step I response, plaintiff said he would "sign off" on the grievance if the moved him out of the unit.  According to the Step I investigation report, plaintiff was observed in and exiting from the day room while serving a loss of privileges sanction from 11/17/2007 through 12/17/2007.  Officers West and Russell deny making any such statement and Officer Snyder, who was present at the time of the incident, confirms their version. Officer Snyder also stated that the incident took place at 2300 hours, before the "formal count" was taken on the third shift, which means plaintiff's statement that the incident took place after "formal count" is a fabrication.  The respondent concluded that there was no evidence to support plaintiff's allegations and denied the grievance.

In his Step II grievance appeal, plaintiff claims that CO West is abusing her power because he received five more tickets after the ticket that was the subject matter of the grievance.  (Dkt. 20, Ex. D).  At Step II, the respondent wrote:

> Grievant has made a serious allegation against a staff member.  The allegation has been denied by staff and the denial is supported by witnesses. Grievant's claim is lacking in credibility and is viewed as having no merit. The Grievance Coordinator will monitor grievances filed by Grievant to determine if modified access to the grievance procedure is warranted.

(Dkt. 20, Ex. D).  On December 11, 2007, plaintiff filed a Step III appeal, claiming his due process rights were violated.  The respondent concluded that staff appropriate handled the grievance at Steps I and II, that no new evidence to support the grievance was submitted, and the denial was upheld.  *Id*.

8.     Grievance SRF 2007110277017c; incident **November 23, 2007**

Plaintiff submitted a grievance on **November 27, 2007** arising from an incident that occurred on November 23, 2007.  (Dkt. 20, Ex. F).  Plaintiff claims that RUO Russell told him that as long plaintiff was in his unit, "if it takes him to be a witness on every ticket that's written on [plaintiff] to get [him] out of this unit then he will do it just to get [plaintiff's] gay ass out the unit."  *Id*.  According to plaintiff, he told RUO Russell that he wanted out of the unit, but he would not accept Russell's unprofessional conduct.  Like his other grievances, plaintiff claimed that RUO Russell's conduct violated MDOC policies and that anything

that happened after this grievance was submitted would be considered "retaliation" against plaintiff.  In the Step I response, the respondent recounts the interview with Office Konnie West, who wrote the misconduct ticket against plaintiff for being in the day room while his privileges were suspended.  She denies ever making any comments to plaintiff about his sexuality or homosexuality in general.  Officer West expressed her belief that the grievance was filed in retaliation for the ticket she wrote.  Officer Russell was also interviewed and stated her belief that the grievance was in retaliation for the ticket previously written and that she has worked with Officer West for over four years and has never heard her say anything negative about homosexuals.  The grievance was denied.  (Dkt. 20, Ex. E).

Plaintiff filed a Step II appeal on December 11, 2007 stating that CO Russell's harassment of him violated Policy Directives 03.03.135 and 02.03.109. In the Step II response, it was noted that staff denied plaintiff's allegations and that plaintiff's claim was lacking in credibility.  The Grievance Coordinator was directed to monitor grievances filed by plaintiff to determine if modified access to the grievance procedure was warranted.  Plaintiff appealed to Step III, stating that CO Russell discriminated against him because of his sexuality and that writing a misconduct ticket was an abuse of authority.  The Step III respondent concluded that staff had properly responded to the grievance and no new information was

provided to negate the Step I and Step II responses.  The grievance was denied at Step III.  (Dkt. 20, Ex. E).

      9.    Misconduct ticket dated **November 27, 2007**

On November 27, 2007, plaintiff received a misconduct ticket by ARUS Novak for being out of place.  He had permission to use the restroom from Officer Stine, but was supposed to return to his cell after that and failed to do so; instead he went to the desk to get a health care kite.  (Dkt. 1, pp. 3-4).  Plaintiff was found guilty based on the statements of ARUS Novak, Free, and Stine.  *Id.*

      10.    Ticket for misconduct on **November 30, 2007**

Plaintiff was ticketed for being out of place on November 30, 2007. According to plaintiff, he was told by RUO Glynn to go to early chow.  (Dkt. 1-2, p. 12).  RUO Glynn denies this and stated that level II prisoners do not go to early chow.  Plaintiff was found guilty of going to early chow without authorization and for being 10 minutes late for his health care call out.  (Dkt. 1-2, p. 12).[3]

      11.    Ticket for misconduct on **December 1, 2007**

On December 1, 2007, plaintiff received a ticket for failing to step back into cell when ordered to do so while on restriction and for stating to Officer Kajdan,

---

[3] Only the misconduct hearing report, and not the misconduct report itself, can be found in the record.

who gave the order, "Bitch shut up." (Dkt. 1, pp. 1-2). Plaintiff was found guilty

based on statements of Freed and Tullar. *Id*.

>    12.    Ticket for misconduct on **December 2, 2007**

On December 2, 2007, plaintiff received a ticket from officer Stoltenberg for

being in the yard smoking while he was on restriction. Plaintiff was found guilty

based on the statements of Freed and Stoltenberg. (Dkt. 1, pp. 49-50).

>    C.    Defendants' Motion for Summary Judgment

Defendants argue that plaintiff failed to exhaust his administrative remedies

as to his claim in this suit because plaintiff claims that he was retaliated against

*because* of the five grievances he filed against the defendants. Any retaliation

would, according to defendants, by definition, have had to occur *after* those five

grievances were filed. (Dkt. 20, p. 4). Therefore, the five grievances identified by

plaintiff could not have contained claims of retaliation; and, because plaintiff did

not file any further grievances exhausted through Step III, defendants argue that

plaintiff clearly has not exhausted his claim. *Id*. On a related note, defendants also

argue that plaintiff has failed to state a retaliation claim because he has identified

no adverse action and without adverse action, there is also a failure to establish

causation. (Dkt. 20, p. 5).

Defendants also claim that they are entitled to Eleventh Amendment

immunity and qualified immunity. (Dkt. 20, pp. 7-8). Defendants contend that a

suit against a state employee in his official capacity is tantamount to a suit against

the state itself and must be dismissed on the basis of Eleventh Amendment

immunity.  Thus, defendants assert that they enjoy Eleventh Amendment immunity

in their official capacities.  (Dkt. 20, p. 7).  With respect to qualified immunity,

defendants argue that they are unaware of any retaliatory activities and plaintiff has

made only an unsupported, conclusory allegation of retaliation.  Thus, defendants

argue that they did not violate the plaintiff's clearly established rights and that they

are entitled to qualified immunity.  (Dkt. 20, p. 8).

     D.    <u>Plaintiff's Responses to Defendants' Motion for Summary Judgment</u>

Plaintiff asserts that defendants falsely state that he failed to exhaust his

administrative remedies, as evidenced by the fully exhausted grievances submitted

by plaintiff.  (Dkt. 25, p. 2).  In his supplemental response to the motion for

summary judgment, plaintiff addresses both the retaliation and qualified immunity

issues.

With respect to defendants' assertion that plaintiff cannot establish causation

on his retaliation claim, plaintiff states that defendant Nowak was involved in

several aspects of the misconduct tickets written against plaintiff and "there is a

high probability that the Defendant's influenced other staff members against the

Plaintiff because of the grievances he filed." (Dkt. 27, p. 4).  Plaintiff further

Report and Recommendation
Defendants' Motion for Summary Judgment
*McDonald v. Briggs*; 08-11731

argues that the misconduct tickets he received occurred after the grievances were filed and are the only misconduct tickets he has ever received.

With respect to defendants' claim of qualified immunity, plaintiff asserts that defendants were on notice that their conduct was unconstitutional given the MDOC policy prohibiting harassment and discrimination of prisoners based on sexual orientation. (Dkt. 27, p. 1; Ex. A). Plaintiff also points to a 2004 opinion from the Southern District of Iowa purportedly standing for the proposition that the Equal Protection Clause of the Constitution bars discrimination based on sexual orientation. (Dkt. 27, citing, *Doe v. Perry Community School District*, 316 F.Supp.2d 809 (S.D. Iowa 2004)). Thus, plaintiff argues, defendants knew or should have known that their harassment and discrimination of plaintiff based on his sexual orientation was unconstitutional at the time they acted. (Dkt. 27).

## III.   DISCUSSION

### A.   Standard of Review

Summary judgment is appropriate under Rule 56(b) "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476, 478-79 (6th Cir. 1995), the court stated the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the non-moving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment.  The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

A genuine issue of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient evidence for a trier of fact to find for the non-moving party.  *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

"In deciding a motion for summary judgment, [the] court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  This is not to say that some credibility determinations are beyond what is appropriate in deciding a motion for summary judgment.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1774, 1776 (2007).

Report and Recommendation
Defendants' Motion for Summary Judgment
*McDonald v. Briggs*; 08-11731

B.    <u>Analysis and Conclusions</u>

1.    Retaliation

A prisoner retains First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974). Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). To establish a First Amendment retaliation claim, the plaintiff must prove that: (1) the plaintiff engaged in activities protected by the Constitution or statute; (2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that this adverse action was taken at least in part because of the exercise of the protected conduct. *Id.* "[I]f a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one." *Id.* at 395. Moreover, the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). If the plaintiff is able to make such a showing, the defendant then has the burden of showing that the same action would have been taken even absent the plaintiff's protected conduct. *Id.*; *Thaddeus-X*, 175 F.3d at 399.

In this case, the undersigned suggests that plaintiff's retaliation claims fail for several reasons. First, plaintiff must show that he engaged in protected conduct. Plaintiff claims that his filing of grievances constitute the protected conduct. This is indeed protected conduct.

Second, plaintiff must present evidence that each defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct. According to defendant, Briggs issued plaintiff a misconduct ticket on November 19, 2007. Plaintiff filed a grievance against Briggs on November 25, 2007, six days *after* the misconduct ticket was issued. Thus, it is not possible for Briggs to have retaliated against plaintiff, by issuing a misconduct ticket, based on the grievance. Thus, the undersigned suggests that plaintiff's retaliation claim against Briggs fails.

As to defendant Ott, while plaintiff filed a grievance against her on November 27, 2007, the undersigned is unable to locate any misconduct tickets issued by her and plaintiff offers no other allegations or evidence of retaliatory conduct by Ott. Thus, the undersigned suggests that plaintiff's retaliation claim against Ott fails.

On November 22, 2007, a misconduct ticket was issued to plaintiff by either defendant West or defendant Russell. Plaintiff filed grievances against them on November 27, 2007. Thus, it is not possible for defendants West or Russell to

have retaliated against plaintiff, by issuing a misconduct ticket, based on the grievance.  Thus, the undersigned suggests that plaintiff's retaliation claims against West and Russell fail.

On November 25, 2007, plaintiff filed a grievance against defendant Novak claiming that she refused his request for a transfer based on his sexual preference. Plaintiff claims that, on November 27, 2007, in retaliation for this grievance, defendant Novak issued a misconduct ticket to him for being out of place while on restriction.  Other than the mere fact that the ticket was issued after the grievance was filed, plaintiff offers no evidence that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Doyle,* 429 U.S. at 287.  Thus, the undersigned suggests that plaintiff has failed to meet his burden regarding the retaliation claim against defendant Novak.

2.    Exhaustion

While addressing exhaustion is unnecessary based on the conclusions reached above, the undersigned will address this issue for the sake of completeness.  The Supreme Court defines proper exhaustion under 42 U.S.C. § 1997e(a) as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)."  *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2385, quoting, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original).  Exhaustion serves a dual purpose: it gives

prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Id*. at 2387-88. Additionally, the exhaustion requirement "has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones*, 127 S.Ct. at 915-16. The court must find that the prisoner's grievance "gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Bell v. Konteh*, 450 F.3d 651, 651 (6th Cir. 2006).

Defendants argue that the five grievances identified by plaintiff could not have contained claims of retaliation; and, because plaintiff did not file any further grievances exhausted through Step III, defendants argue that plaintiff clearly has not exhausted his claim. According the grievance procedure, decisions made in "minor misconduct hearings" are not grievable. (Dkt. 20, Ex. G). Thus, as to one of the misconduct tickets (dated November 19, 2007), plaintiff was not required to file a grievance in order to exhaust his administrative remedies. However, he was required to complain of retaliation during the hearing. *Siggers v. Campbell*, 2008 WL 5188791, *4 (E.D. Mich. 2008); *see also Garrison v. Walters*, 18 Fed.Appx. 329, 331 (6th Cir. 2001) (finding a failure to exhaust a retaliation claim under § 1983 where the plaintiff's grievance "did not state any facts that would have

indicated that he was grieving [the defendant's] alleged retaliatory conduct."). There is no evidence in the record, nor has plaintiff offered any evidence, showing that plaintiff complained of retaliation during his minor misconduct hearing. Thus, this claim is unexhausted.

The remainder of plaintiff's misconduct tickets are major misconduct tickets. (Dkt. 1). Nothing in the grievance procedure would appear to preclude plaintiff from filing a grievance regarding the alleged retaliation by defendants in issuing these tickets. In order to exhaust the major misconduct tickets, plaintiff was required to file a request for rehearing, which is appears to be the case based on documentation submitted with his complaint. *See Siggers*, 2008 WL 5188791 at *4. However, there is no evidence in the record, and plaintiff has offered none, showing that he complained of retaliation during any of the major misconduct hearings. *Id.* Thus, the undersigned suggests that plaintiff failed to exhaust these claims as well.

3.   Eleventh Amendment immunity

The Eleventh Amendment to the United States Constitution bars suits against states and their departments or agencies in federal court. *Alabama v. Pugh,* 438 U.S. 781 (1978); *Quern .v Jordan*, 440 U.S. 332 (1979). A suit against a public official in their "official capacity" is a suit against the public entity that employs the public official. *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008),

citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  The MDOC, as a State agency, is not subject to suit under 42 U.S.C. § 1983 based on sovereign immunity.  And, to the extent defendants are sued in their official capacity; that immunity extends to them.  "The Eleventh Amendment bars suits brought in federal court against a state and its agencies unless the state has waived its sovereign immunity or consented to be sued in federal court."  *Id*.  The record does not indicate that the State of Michigan has waived its immunity or otherwise consented to being sued and, therefore, the claim cannot be maintained against defendants in their official capacity.  Thus, the undersigned suggests that plaintiff's claims against defendants in their official capacity are barred.  While the Eleventh Amendment does not bar suit against defendants in their individual capacity, the undersigned suggests, as set forth above, that judgment in their favor, individually, is warranted on other grounds.

## IV.   RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED** and that plaintiff's complaint be **DISMISSED** with prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2).  Failure to file specific

Report and Recommendation
Defendants' Motion for Summary Judgment
*McDonald v. Briggs*; 08-11731

objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Administrative Order 09-AO-042. The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 3, 2010

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on February 3, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following:  Clifton B. Schneider, and I certify that I have mailed by United States Postal Service the paper to the following non-ECF participant at the following addresses*: Lawrence McDonald, # 358328, GUS HARRISON CORRECTIONAL FACILITY, 2727 E. Beecher Street, Adrian, MI 49221 and Lawrence McDonald, # 358328, RYAN CORRECTIONAL FACILITY, 17600 Ryan Road, Detroit, MI 48212.

*The court docket reflects that the plaintiff's address is the Gus Harrison Correctional Facility.  However, a check with the Michigan Department of Corrections prisoner tracking system indicates that the plaintiff is currently located at the Ryan Correctional Facility.

<div style="margin-left:50%">

s/Tammy Hallwood
Case Manager
U.S. District Court
600 Church Street
Flint, MI 48502
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

</div>